**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00721-RSE**

JENNIFER G.                                                                                    PLAINTIFF

VS.

FRANK BISIGNANO,
*Commissioner of Social Security*                                              DEFENDANT

**MEMORANDUM OPINION**
**AND ORDER**

The Commissioner of Social Security denied Claimant Jennifer G.'s applications for

disability insurance benefits and supplemental security income benefits. Claimant seeks judicial

review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), filing a fact and law

summary and brief. (DN 16-2; DN 16). The Commissioner responded in a fact and law summary,

(DN 17), and Claimant did not reply.

The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 14).

## I. Findings of Fact

Claimant Jennifer G. ("Claimant") applied for disability insurance benefits and

supplemental security income under Titles II and XVI of the Social Security Act in July 2024, with

an alleged onset date of June 27, 2023. (Transcript, hereinafter, "Tr." 239-42). Her applications

were denied by the State agency Disability Determination Service at both the initial and

reconsideration levels. (Tr. 76-79, Tr. 80-81).

At Claimant's request, Administrative Law Judge Stacey Foster ("ALJ Foster") conducted a hearing by telephone on May 22, 2025, at which both Claimant and a vocational expert ("VE") testified. (Tr. 41-61). Prior to the hearing, Claimant's representative submitted a memorandum to ALJ Foster raising several continuing objections to the VE's testimony should he fail to produce relevant documentation to support his testimony or fail to explain his methodology with sufficient specificity, among others. (Tr. 365-67).

During the hearing, Claimant testified as follows. She is 45 years old, has a high school education, and lives with her daughter and daughter's father. (Tr. 46). She experiences diabetic seizures that render her unable to drive and she depends on others for transportation, usually her daughter's father. (*Id.*). She had a stroke in June 2023 and has since experienced weakness on the left side of her body that affects her ability to carry things with her left arm. (Tr. 47). Claimant explained that she used to "load up" her left arm with Kroger bags and now can "barely carry two bags with canned goods or heavy meats." (*Id.*). She testified that she can carry up to six pounds without experiencing pain. (Tr. 48).

In response to the hypothetical posed by ALJ Foster, the VE testified that the individual described could perform the jobs of (1) routing clerk, for which approximately 122,000 jobs exist in the national economy, (2) marker, for which approximately 170,000 jobs exist in the national economy, and (3) router, for which approximately 55,000 jobs exist in the national economy. (Tr. 55). He explained that to obtain such information, he relied on the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO") to classify the occupations, and SkillTRAN to obtain estimated job numbers. (Tr. 55-56). He went on to explain that SkillTRAN provides a job number for each DOT occupation title and then groups those titles

2

under Standard Occupational Classification ("SOC") codes. (*Id.*). In determining the job number, the VE testified, he relies on his education, training, and experience in addition to the aforementioned sources to determine whether all the DOT titles under a given SOC code fit the hypothetical posed and to reduce the job number provided by SkillTRAN if appropriate. (*Id.*). The VE next testified that SkillTRAN compiled information using the same definitions of exertion and skill level, which make up the specific vocational preparation ("SVP"), as those used by the Social Security Administration. (*Id.*). The VE noted that SkillTRAN does not have a separate category for education, but that education is nonetheless included in SkillTRAN's methodology because "by definition, education is one of the components of the SVP[.]" (*Id.*). The VE further verified that while he only relied on SkillTRAN to obtain estimated job numbers, he compared those numbers to those in the Occupational Employment Quarterly. (Tr. 57-58).

After the hearing, Claimant's representative submitted another memorandum raising objections to the VE's testimony, arguing that the testimony was unreliable and the jobs cited should be afforded little weight because of the VE's reliance on SkillTRAN. (Tr. 371-73). In support, Claimant posited that the VE did not explain his methodology or conduct an independent analysis to determine the estimated job numbers and relied solely on an "automated output from a third-party tool, the methodology of which [the VE] does [not] know and cannot validate." (*Id.*).

On August 25, 2025, ALJ Foster issued a decision finding that Claimant was not disabled. (Tr. 10-27). In applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ Foster found as follows. First, Claimant has not engaged in substantial gainful activity since June 27, 2023, her alleged onset date. (Tr. 13). Second, Claimant has the following severe impairments: cerebrovascular accident, diabetes, hypertension, hypothyroid, peripheral neuropathy, major

depressive disorder, and post-traumatic stress disorder. (*Id.*). Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). Fourth, ALJ Foster found Claimant has the residual functional capacity ("RFC") to perform light work with the following limitations:

> no climbing of ladders, ropes, or scaffolds; no more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs; frequent handling and fingering with the left upper extremity; no balancing on narrow, slippery, or erratically moving surfaces; no concentrated exposure to vibration and hazards; and no exposure to hazards.

(Tr. 17). ALJ Foster also found that Claimant can do the following:

> understand, remember, and carry out simple instructions and procedures involving brief initial learning periods, defined as periods of 30 days or less; maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation; tolerate occasional interaction with supervisors, coworkers, and the public; and adapt to the pressures and changes of a routine work environment.

(*Id.*). Finally, at step five of her analysis, ALJ Foster determined that Claimant is unable to perform any past relevant work, but can perform other work including routing clerk, marker, and router, each of which have or exceed 55,000 jobs nationally. (Tr. 25-27). In doing so, ALJ Foster accepted the VE testimony and overruled Claimant's objections, concluding that the VE adequately explained his approach, including the use of his own vocational "training, knowledge, and experience[,] " in responding to the hypotheticals posed. (*Id.*).

Claimant appealed ALJ Foster's decision, and the Appeals Council declined review. (Tr. 1-2). At that point, ALJ Foster's decision became the final decision of the Commissioner, and Claimant sought judicial review from this Court pursuant to 42 U.S.C. § 405(g). (DN 1).

II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id*. at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 495(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

When the Court reviews the Administrative Law Judge's application of legal standards, the decision is reviewed for harmless error. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Accordingly, when an Administrative Law Judge fails to adhere to the appropriate rules and regulations, remand is warranted if "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)).

### III. Conclusions of Law

Claimant asserts three claims of error. The first two take issue with ALJ Foster's evaluation of a consultative examiner's medical opinion and failure to incorporate that opinion into the RFC. (DN 16, at PageID # 1045-51). The third claim of error takes issue with ALJ Foster's evaluation of the evidence presented by the VE. (*Id.*, at PageID # 1051-53).

### A. ALJ Foster's Evaluation of Dr. Endo's Medical Opinion

First, Claimant argues that ALJ Foster erred in her evaluation of consultative examiner Dr. Toyokazu Endo. (DN 16, at PageID # 1045-49). Claimant attended a consultative examination by Dr. Endo on November 30, 2023. (Tr. 709-11). Dr. Endo found that Claimant can use her left hand "with limited ability to pinch, grasp, and manipulate small and large objects" and "can lift 1/2 lb with [her left] arm." (*Id.*). ALJ Foster found that Dr. Endo's opinion was not persuasive and stated the following:

> The opinion of Dr. Endo is not persuasive. This opinion found the claimant could sit without issues but only stand for 20 minutes, walk for 8 minutes, lift 10 pounds with the right arm, lift ½ pound with the left arm, has limited ability to pinch, grasp, and manipulate small and large objects. This opinion is not well supported by the corresponding consultative exam findings noting normal gait and range of motion of the spine with normal coordination and largely intact strength (4/5 on the left and 5/5 on the right). The extreme limits regarding standing and walking are also not well supported by the claimant's reports during the exam that

6

she has no problems with walking or using the left leg. While the claimant had decreased left shoulder/elbow range of motion and "difficulty" with pinch, grasp, manipulation, closed fist, and opposing fingers, which would support his finding of "limited" ability to pinch, grasp, and manipulate, he does not indicate these activities are precluded and does not indicate the level of limitation. In addition, the limits, particularly as to sitting, standing, walking, and lifting with the left arm are not consistent with the other evidence of record. While the claimant did have a stroke, she was discharged after one night and has had minimal follow-up. The claimant has not had formal occupational or physical therapy and only conservative treatment throughout (medication management). She had one visit with a neurologist the month before this consultative exam and her examination from that visit was essentially normal but for slight decrease in finger strength. For these reasons, the opinion is not persuasive.

(Tr. 22).

In determining a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.* In evaluating a medical opinion of record, ALJs need not individually address each examination finding therein to comport with the articulation requirement. *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)). They need only provide a sufficient explanation of the supportability and consistency of a medical opinion to comply under the

regulations. *Najib J. v. Comm'r of Soc. Sec.*, No. 24-12870, 2025 WL 4666452, at \*5 (E.D. Mich. Dec. 19, 2025), *report and recommendation adopted* 2026 WL 751895 (E.D. Mich. Mar. 17, 2026).

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

Claimant argues that Dr. Endo's opined limitations regarding Claimant's ability to pinch, grasp, and manipulate objects were supported by his evaluation and ALJ Foster's finding that his opinion was unsupported was inaccurate and demonstrates that she did not consider the opinion in full. (DN 16, at PageID # 1048-49). If she had, Claimant believes that ALJ Foster would have understood that Dr. Endo concluded that Claimant has "a limited, or minimal, ability to pinch, grasp, or manipulate" with her left hand at all. (*Id.*).

ALJ Foster expressly acknowledged that Dr. Endo's examination findings would support his conclusion regarding Claimant's "limited" ability to pinch, grasp, and manipulate objects. (Tr. 22). In nonetheless finding his opinion unpersuasive, however, ALJ Foster noted that Dr. Endo indicated such activities should be "limited" but failed to specify the degree of such limitation and

8

did not indicate that such activities should be precluded entirely. (*Id.*). This analysis demonstrates that ALJ Foster declined to interpret the opined "limited" limitation to mean minimal, or any other degree of limitation for that matter, because Dr. Endo did not specify that "limited" was intended to be interpreted as such. And "an ALJ can properly discount the weight of an expert opinion when it is too vague and does not support specific functional limitations[,]" just as ALJ Foster did here. *Katelyn M. v. Comm'r of Soc. Sec.*, No. 2:23-cv-12276, 2024 WL 4124675, at *10 (E.D. Mich. Sep. 9, 2024) (citing *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008)). ALJ Foster did not err in discounting Dr. Endo's opined limitation for its lack of specificity, or in declining to independently interpret Dr. Endo's opinion as to the degree of such limitation.

Claimant also argues that ALJ Foster failed to adequately address Dr. Endo's range of motion findings and corresponding limitations restricting Claimant to lift ten pounds with the right arm and half a pound with the left. (DN 16, at PageID # 1049). But ALJ Foster did not have to explain why she did not adopt each limitation opined by Dr. Endo, nor did she have to individually address each of his examination findings. *Ebeling*, 2022 WL 3006209, at *3; *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195-96 (6th Cir. 2020) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (quoting *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999))). ALJ Foster only needed to sufficiently address the supportability and consistency of Dr. Endo's opinion in her decision. *Najib J.*, 2025 WL 4666452, at *5.

ALJ Foster adequately did so here. ALJ Foster described the limitations opined and explained why she found those limitations unsupported with specific reference to Dr. Endo's

examination findings noting Claimant's "normal gait and range of motion of the spine with normal coordination and largely intact strength (4/5 on the left and 5/5 on the right)." (Tr. 22). ALJ Foster went on to explain how Dr. Endo's opined limitations were inconsistent with the other evidence of record that depict Claimant's conservative treatment history, never receiving formal physical or occupational therapy, and her generally normal examination results from another provider during the same period. (*Id.*). ALJ Foster's evaluation properly accounted for the supportability and consistency of Dr. Endo's opinion, as required by the regulations, and the evidence cited provides substantial evidence to support her conclusion that Dr. Endo's opinion was not persuasive.

Claimant also argues that ALJ Foster did not thoroughly review the record in evaluating Dr. Endo's opinion, because if she had, Claimant submits, ALJ Foster would have understood that Claimant's minimal treatment history was due to a lack of transportation and insurance, making Dr. Endo's opinion "that much more important." (DN 16, at PageID # 1049). As discussed, however, ALJ Foster's failure to expressly reference every piece of evidence in the record does not render her decision, or evaluation of Dr. Endo's opinion, faulty. *See Rottmann*, 817 F. App'x at 195-96. Even so, her decision reflects that she considered Claimant's transportation issues, expressly mentioning it as Claimant's stated cause for her refusal to pursue both physical and occupational therapy. (Tr. 19). And despite this explanation for Claimant's limited treatment history, "the absence of treatment for an impairment can itself shed light on that impairment's severity" and is a factor upon which the ALJ may rely to discount a medical source's opined limitations. *Albert v. Comm'r of Soc. Sec.*, No. 2:18-cv-907, 2019 WL 2240244, at *7 (S.D. Ohio May 24, 2019). ALJ Foster properly did just that by noting Claimant's lack of treatment history as a factor relevant in her decision to discount Dr. Endo's opinion. (Tr. 22). Claimant does not provide

authority to support her arguments to the contrary.

In sum, ALJ Foster adequately evaluated Dr. Endo's opinion and did not err in finding it unpersuasive. Accordingly, Claimant's first claim of error is without merit.

B. ALJ Foster's RFC Assessment

Next, Claimant contends that ALJ Foster's "erroneous evaluation of Dr. Endo's opinion permeated into an erroneous RFC assessment not supported by substantial evidence." (DN 16, at PageID # 1051). Per Claimant, had ALJ Foster adequately accounted for the range of motion data contained in Dr. Endo's examination findings she would have incorporated occasional reaching and occasional handling and fingering limitations on the left into the RFC, the inclusion of which leaves no available jobs in the national economy and renders Claimant disabled. (*Id.* at PageID # 1050-51).

An ALJ is required to consider the limiting effects of all a claimant's impairments, severe and nonsevere, in the RFC. 20 C.F.R. § 404.1545(e). That said, an ALJ need only provide an adequate explanation to demonstrate all of a claimant's impairments were considered, there is no requirement that impairments be individually discussed. *See Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999-1000 (E.D. Mich. 2024) (finding that "even if the ALJ failed to explain why" there were no mental limitations in the RFC, the ALJ did not err because he specifically discussed the claimant's mental impairments in the RFC assessment). In doing so, "the ALJ may not interpret raw medical data in functional terms." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). For that reason it is "critical" the ALJ consider the "residual capacity opinions offered by medical sources such as treating physicians, consultative examining physicians, medical experts who testify at hearings before the ALJ, and state agency physicians who reviewed the

11

claimant's medical records" in formulating the RFC. *Id.* at 911-12.

While Claimant cites the range of motion data from her consultative exam with Dr. Endo, she does not provide authority in support of her position that such data necessitates greater limitations than those incorporated in the RFC. (DN 16, at PageID # 1050-51). Dr. Endo's opinion regarding the relevance of the range of motion data to Claimant's physical limitations, upon which Claimant relies, did not include corresponding reaching limitations and included only a non-specific hand-mobility limitation of "limited" and lifting limitations. (Tr. 709-11). Even if it had, no error results "from an ALJ's decision not to incorporate limitations into the RFC based on the opinions of medical providers whose opinions have been properly rejected." *Berry v. Saul*, No. 1:18-cv-01906, 2019 WL 4600433, at *7 (N.D. Ohio Sep. 23, 2019). Moreover, Claimant does not point to, nor can this Court find, any medical opinion of record imposing the reaching limitations she now submits. Nor does Claimant point to any persuasive authority to show that ALJ Foster was somehow bound to incorporate additional functional limitations into the RFC to account for Claimant's range of motion results.

Additionally, the Court disagrees with Claimant's position that ALJ Foster failed to consider Claimant's range of motion in crafting the RFC. As it relates to Claimant's arm and hand-related physical impairments, the opinions of record included Dr. Endo's and those of state agency medical consultants Drs. Paul McLaughlin and P. Saranga. (Tr. 80-81, Tr. 98-99, Tr. 709-11). ALJ Foster expressly referenced the range of motion data at issue in her discussion of all three opinions. In finding both state agency consultants' opinions persuasive, ALJ Foster noted that she included additional limitations beyond those opined by the consultants considering the "decreased left upper extremity strength and range of motion" Claimant displayed in her consultative physical exam

with Dr. Endo. (Tr. 23). ALJ Foster went on to explain that she declined to impose greater limitations, such as those opined by Dr. Endo, because other than the "decreased left upper extremity strength and range of motion[,]" Claimant's exams throughout the period under consideration displayed "normal strength and normal range of motion of all other extremities[.]" (*Id.*). Claimant's suggestion that ALJ Foster should have independently interpreted the range of motion data to impose greater restrictions in the RFC lacks merit, as an ALJ is not a physician and "may not interpret raw medical data in functional terms." *Kinney v. Comm'r of Soc. Sec.*, No. 1:19-cv-604, 2020 WL 5626922, at*7 (W.D. Mich. Sep. 21, 2020) (citing *Deskin*, 605 F. Supp. 2d at 912).

Based on the conclusions above, the Court finds that ALJ Foster's decision not to incorporate greater arm and hand limitations in the RFC was supported by substantial evidence. While Claimant points to evidence of record which she claims to support a contrary result, "this [C]ourt's role is not to second-guess the ALJ's conclusions." *Charles W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00312-DJH-CHL, 2023 WL 5011745, at *11 (W.D. Ky. July 5, 2023). Claimant's second claim of error is without merit.

<u>C. ALJ Foster's Evaluation of the VE Testimony</u>

Claimant's third and final claim of error is that ALJ Foster failed to properly evaluate the VE testimony pertaining to the number of jobs existing in the national economy. (DN 16, at PageID # 1052). Specifically, Claimant challenges the VE's testimony concerning the estimated job numbers existing in the national economy, contending the job numbers presented by the VE do not conform with the job numbers listed in the SkillTRAN database. (*Id.*). Claimant provides SkillTRAN data from September 2025 that indicates approximately 160,000 jobs exist for marker,

and 22,200 jobs exist for router. (*Id.*; *See* DN 16-1).

At step five, the ALJ determines whether the claimant, based on her RFC and vocational factors, can perform other work existing in the national economy. 20 C.F.R. § 404.1520(g)(1). The Commissioner bears the burden of proof at step five, and VE testimony identifying specific jobs a claimant can perform can constitute substantial evidence to support the ALJ's findings. *Trista L. v. Comm'r of Soc. Sec.*, No. 2:25-cv-01184, 2026 WL 1133321, at *4 (S.D. Ohio Apr. 27, 2026).

SSR 24-3p went into effect on January 6, 2025, rescinding and relacing SSR 00-4p, and provides the standard ALJs must apply in evaluating whether vocational evidence is sufficient to support a disability determination. 2024 WL 5256890, at *1. The Ruling establishes that VEs "may provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant" under agency rules, acknowledging "VEs are in the best position to determine the most appropriate sources of data to support the evidence they offer." *Id.* at *4. In light of that expertise, VEs are expected to explain their general approach to estimating job numbers but "a more detailed inquiry into the sources of data or approaches [the VE] used is not usually required." *Id.* The standard imposed in the new Ruling affords ALJs "more leniency" than its predecessor so as not to "discourage use of occupational information that is reliable and commonly used in the vocational profession." *Ayers v. Bisignano*, No. 6:25-39-KKC, 2025 WL 3143036, at * 5 (E.D. Ky. Nov. 10, 2025); SSR 24-3p, 2024 WL 5256890, at *2.

Against this backdrop, Claimant contends that ALJ Foster's failure to independently verify the job numbers provided by the VE demonstrates that ALJ Foster failed to maintain her "duty to evaluate the evidence presented by the VE under SSR 24-3p" and warrants reversal. (DN 16, at

14

PageID # 1052).

The Court is unconvinced. First, the plain language of SSR 24-3p does not impose an affirmative duty to investigate the accuracy of the VE's testimony. SSR 23-4p's more stringent predecessor, SSR 00-4p, did not impose such a duty, *see Rooks v. Astrue*, No. 1:07CV-00139-J, 2008 WL1901397, at *5 (W.D. Ky. Apr. 24, 2008), and Claimant does not present authority to suggest that SSR 23-4p should be interpreted otherwise. Moreover, Claimant did not raise the alleged conflict between the VE testimony and job numbers listed on the SkillTRAN database in her post-hearing memorandum. *See Poole v. Bisignano*, No. 5: 25-139-DCR, 2025 WL 3102065, at *4 (E.D. Ky. Nov. 6, 2025) (finding "the ALJ [was] not obligated to investigate further or notice the alleged conflict between the DOT and the VE's testimony as it was not obvious and [claimant] made no objection." (internal citation omitted)). Rather, she asserted SkillTRAN was not an acceptable data source and rendered the VE's testimony not inaccurate, but unreliable. In overruling that objection, ALJ Foster pointed to the VE's testimony during the hearing explaining his general approach to estimating job numbers, including how SkillTRAN compiles information, and how he uses his own "vocational training, knowledge, and experience to adjust" the SkillTRAN job numbers where appropriate. (Tr. 26-27). Through this analysis, ALJ Foster complied with the requirements of 24-3p and demonstrated her basis for accepting the VE's testimony and his reliance on SkillTRAN despite Claimant's objections. The Court declines to find that ALJ Foster had an additional obligation to independently verify each job number presented by the VE. To find otherwise runs contrary to the very motivation behind the enactment of SSR 23-4p.

Even if ALJ Foster erred by failing to independently verify the job numbers presented by

15

the VE, which this Court concludes she did not, the Court finds any such error to be harmless. *See*

*Rabbers*, 582 F.3d at 654 (recognizing an ALJ's alleged failure to comply with regulations is

reviewed for harmless error). The alleged discrepancies only apply to two of the three jobs

identified by the VE. Claimant does not challenge the position of routing clerk, which exists in

significant numbers in the national economy with approximately 122,000 positions and provides

substantial evidence in support of ALJ Foster's finding at step five. The same is true even if ALJ

Foster considered the lower estimated job number Claimant now provides. This Circuit "has

repeatedly declined to declare a 'magic number [or percentage when] evaluating whether

a job exists in significant numbers.'" *Poole*, 2025 WL 3102065, at *3 (citing *Doran v. Comm'r of

Soc. Sec.*, 467 F. App'x 446, 449 (6th Cir. 2012); *Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541,

545–47 (6th Cir. 2025)). Even considering these lower numbers, they still present a combined total

exceeding 300,000 jobs in the national economy and surely exceed the "significant number"

threshold. Claimant's third claim of error is without merit.

## ORDER

For the reasons set forth above, ALJ Foster's decision is supported by substantial evidence

and comports with the applicable regulations. **IT IS THEREFORE ORDERED** that the final

decision of the Commissioner is **AFFIRMED.** This is a final and appealable Order and there is no

just cause for delay.

**IT IS SO ORDERED.**

Copies:          Counsel of Record

16